The Reverend Jesse CAVILEER, the Reverend Joseph Houle, and Samuel Lane

v.

The CITY OF PITTSBURGH, a municipal corporation, the Council of the City of Pittsburgh, a legislative body and Richard S. Caliguiri, Mayor of Pittsburgh, in his representative capacity, and Warner Cable Corporation of Pittsburgh.

Civ. A. No. 81–633.

United States District Court, W.D. Pennsylvania.

April 12, 1983.

Stephen Jurman, Pittsburgh, Pa., for plaintiff.

Marvin A. Fein, City Sol., Pittsburgh, Pa., for defendants.

Byrd R. Brown, Pittsburgh, Pa., for Warner Cable.

OPINION

MANSMANN, District Judge.

This matter comes before the Court on Motions for Summary Judgment filed by

both Plaintiffs and Defendants City of Pittsburgh ("City"), Mayor Richard S. Caliguiri, ("Caliguiri") and the City Council of the City of Pittsburgh ("Council"). This action[1] was filed by the Plaintiffs against Defendants alleging that they have been deprived of their rights secured by the First and Fourteenth Amendments to the United States Constitution in violation of Title 42 U.S.C. § 1983.[2] For the reasons set forth below, Defendants' Motion is granted. Plaintiffs' Motion, being moot, is denied.

\* \* \* \* \* \*

Under Fed.R.Civ.P. 56(c) summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The Court of Appeals for the Third Circuit has made clear that any doubts as to the existence of genuine issues of fact are to be resolved against the moving party. *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Co.,* 667 F.2d 402, 405 (3d Cir.1981). Further, the facts and the inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Continental Ins. Co. v. Bodie, supra* at 438; *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 405 (3d Cir.1981).

With the above standard in mind, the facts may be briefly summarized as follows:

Plaintiffs, the Reverend Jesse Cavileer ("Cavileer"), the Reverend Joseph Houle ("Houle") and Samuel Lane ("Lane") are residents and taxpayers of the City. Each Plaintiff claims that he is a potential subscriber to the cable communication system installed in the City by Warner pursuant to a franchise granted to Warner by the City.

Defendant Caliguiri is Mayor of the City and as such has the authority to approve or reject resolutions passed by Council.

Pursuant to its grant of legislative power, Council adopted Ordinance No. 20, "Cable Communications," published as Title I, Article II, Chapter 425 of the Pittsburgh Code ("Ordinance 20"). The purpose of Ordinance 20 was to regulate all phases of the cable communication system in the City, beginning with the erection thereof and continuing through use by subscribers.

Council then issued a request for proposals in order to award the franchise to one of the bidders. After rejecting the initial proposals which had been submitted, Council issued a second request for bids. In both of its requests for proposals, the City included eight "position papers", one of which was that of Christian Associates of Southwest Pennsylvania ("CASP"),[3] a religious agency representing 12 Christian denominations whose membership is composed of citizens of southwest Pennsylvania. Each organization which had submitted a "position paper"

---

**1.** Plaintiffs were permitted to amend their Complaint by Order of Court dated June 29, 1982. At that time Plaintiffs joined Warner Cable Corporation of Pittsburgh ("Warner").

Plaintiffs concede in their Reply Memorandum to Warner's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment that Warner is a party to this lawsuit only because of the contract between the City and Warner. Plaintiffs do not contend that Warner acted under color of state law or as part of a conspiracy. Because of our finding that Warner is a private corporation which did not act under color of state law, Warner is not subject to the strictures of the Fourteenth Amendment. Accordingly, this action is dismissed as to Warner for lack of subject matter jurisdiction.

**2.** 42 U.S.C. Sec. 1983 reads in pertinent part as follows:

Sec. 1983. Civil action for deprivation of rights.

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**3.** *See* City's Exhibit A, Position Papers.

set forth its reasons in the "position paper" as to why it should be granted an access channel on the cable system to be selected.

Upon the receipt of four proposals, Council considered all of them and ultimately awarded the franchise to Warner.

Shortly thereafter, the City entered into a Franchise Agreement ("Agreement") with Warner which incorporated Warner's proposal into the Agreement.

Pursuant to the Agreement, the City was given certain rights to regulate various phases of the cable communication system, including, but not limited to, management. As well, the City was to receive revenues in return for the grant of the franchise.

Warner's proposal, now incorporated into the Agreement, included a provision granting CASP a full-time channel and, as well, $60,000 in equipment[4] for use in the production of local religious television programming.

Additionally, "Christian Associates would program the channel and would assume responsibility for its administration and scheduling." Plaintiffs' Amended Complaint ¶ 24. Although not limiting participation in programming to members, CASP could invite non-members to participate in programming the channel, but "the procedure for such participation would be determined by Christian Associates ... keeping in mind that the judicatories of Christian Associates would be given priority consideration." *Id.*

\* \* \* \* \* \*

In support of its Motion for Summary Judgment, the City alleges, *inter alia,* that the Plaintiffs lack standing to challenge the constitutionality of the action of the City in granting the franchise to Warner in which the contract which was previously executed between Warner and CASP was incorporated into the Agreement. Because we agree with the City that the Plaintiffs have not alleged an injury in fact, we do not reach

the other issues raised by the City in its Motion. Neither do we reach any of the matters raised by Plaintiffs in their Motion.

In support of its Motion the City contends that whether the status of Plaintiffs is that of residents, taxpayers or potential subscribers to the Warner cable system, Plaintiffs have no standing to challenge the constitutionality of the alleged action taken by the City. The City further contends that Plaintiffs have not set forth any facts which allege a personal injury.

Because the Warner system consists of 60 channels, six of which are set aside for the use of anyone, the City alleges that Plaintiffs are not forced to select the channel programmed by CASP. As well, the City contends that if Plaintiffs wish to present programs, they have five neighborhood studios at their disposal and six channels at their disposal in which to make their own tapes and to present programs.

The City claims that not only have tax-dollars not been expended on the cable system but, in fact, the City is to *receive* monies from Warner, and, therefore, Plaintiffs lack standing as taxpayers.

Finally, the City alleges that Plaintiffs have never asked CASP for programming on CASP's channel. As well, the City argues that Plaintiffs have never alleged that they cannot participate either in the Warner system in general or on CASP's channel in particular. The City contends that what Plaintiffs have alleged is that they have been denied membership in CASP,[5] which is very different from being denied access to CASP's channel.

At oral argument, Plaintiffs claimed that whether they have access to the cable system is irrelevant, and, in fact, have never made any allegations that they have been so denied.

According to Plaintiffs, what is relevant is that they have been denied membership in CASP.[6] Thus, Plaintiffs argue, the

---

**4.** Since this Amended Complaint was filed, Warner, instead, gave CASP a check for $60,-000.

**5.** *See* Affidavits of Cavileer and Houle.

**6.** Houle's affidavit is somewhat ambiguous on whether he applied for and was denied membership. "I inquired on behalf of Metropolitan Community Church of Pittsburgh into the crite-

City's apparent or intentional support of CASP results in the City's discrimination against them.

As a result of CASP's receipt of $60,000 and a channel from Warner, Plaintiffs allege that they have suffered an injury. By virtue of the fact that the contract between Warner and CASP is now part of the Agreement between the City and Warner, Plaintiffs allege that they have been subjected to discrimination violative of the First Amendment.

Finally, Plaintiffs contend that as subscribers[7] to Warner's Cable System their use and/or enjoyment of that system is "colored" by the very presence of CASP's channel, now mandated by the Agreement between Warner and the City.

\* \* \* \* \* \*

The Constitution of the United States limits the power of the federal court to actual "cases" or controversies. U.S. Const. Art. III § 2. Thus, the fact that a party brings a declaratory action seeking an adjudication of its rights does not automatically fulfill the dictates of Art. III. In order to comply with such dictates, the party seeking an adjudication must demonstrate to the Court that he or she has standing to litigate the suit. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

The term "standing" is a composite of "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974).

> (A)t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Real-*

tors v. Village of Bellwood, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925–26, 48 L.Ed.2d 450] (1976) (footnote omitted).

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra* 454 U.S. at 472, 102 S.Ct. at 758.

 Addressing the second aspect of standing, the prudential limitations of judicial power, the claimant must assert his or her own legal rights and cannot stand on the rights of third parties. *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205. As well, the court must abstain from exercising its remedial powers when it is confronted by a generalized grievance rather than a particularized injury to the party before it. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., supra* 454 U.S. at 475, 102 S.Ct. at 760.

The Court's final area of inquiry must be addressed to "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp.,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

\* \* \* \* \* \*

Plaintiffs ask this Court to enjoin the City from enforcing the Agreement whereby the City would be required to confer on CASP that which CASP had previously contracted for with Warner. It is Plaintiffs' contention that as a result of this Agreement, the City has become entangled with a religious organization and that such entanglement creates the appearance of govern-

---

ria for membership in Christian Associates of Southwest Pennsylvania. I learned that the Metropolitan Community Church of Pittsburgh was ineligible for membership in Christian Associates of Southwest Pennsylvania." Houle Affidavit.

**7.** Plaintiffs make this argument in their Reply to the City's Memorandum. Heretofore, Plaintiffs argued that they were *potential* subscribers. We further note that this allegation is not supported by either an amendment to the Amended Complaint or by Affidavits.

ment support of a particular religious group.

The City contends that this case is governed by *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700.

Plaintiffs argue that *Valley Forge* is not controlling and contend that *Valley Forge* deals only with federal taxpayer standing and not with municipal taxpayer standing. Plaintiffs contend that it is *Donnelly v. Lynch*, 691 F.2d 1029 (1st Cir.1982) which controls.

■ There has been no contention on the part of the Plaintiffs that their taxdollars have been expended in support of either Warner's entire cable system or CASP's channel in particular. We are, therefore, at a loss as to why Plaintiffs allege that they have standing as taxpayers. A careful review of the entire Record before us shows not one shred of evidence that anything other than private monies have been used in the Warner system. As well, there is no evidence in the Record that Warner operates as anything but a private system. Therefore, Plaintiffs lack standing as taxpayers to bring this suit.

■ We next address the issue of whether Plaintiffs have alleged an "injury in fact." The Supreme Court has made it abundantly clear that absent a particularized injury different from that of the rights of the general citizenry to require the Government to conduct its affairs in accordance with the law a party lacks standing under Art. III. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 482, 483, 102 S.Ct. at 764, 765 and cases cited therein.

Plaintiffs claim that at the time that CASP was formed, the Unitarian-Universalist Church of The North Hills applied for and was denied membership in CASP. *See* Cavileer Affidavit. We note that the North Hills is not within the limits of the City. As well, we note that this church is not a party to this lawsuit. Cavileer states that he is the minister of the Allegheny Center Unitarian Church. There is no allegation that the Allegheny Center Unitarian Church was denied membership in CASP.

Additionally, Houle contends that while he was the minister of the Metropolitan Community Church of Pittsburgh from 1978 to 1982, he inquired on behalf of that church as to the criteria for membership in CASP. He further contends that he was informed that the Metropolitan Community Church was ineligible for membership in CASP. *See* Houle affidavit.

The Record is devoid of any reference whatsoever to Samuel Lane ("Lane"). Indeed all we know of Lane is from the Complaint and Amended Complaint whereby it is stated that he is a resident and taxpayer of the City and a potential subscriber to Warner's system. He does not claim affiliation with any church or that he either sought or was denied membership in CASP. Based on the holding of *Valley Forge* we fail to see that Lane has either claimed or established an "injury in fact."

In *Valley Forge* the Plaintiffs brought suit in federal district court alleging that when the Department of Health, Education and Welfare (HEW) disposed of a tract of land on which was situated a military hospital to Valley Forge Christian College such transfer violated the Establishment Clause of the First Amendment. 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700. Plaintiffs were a nonprofit organization which characterized themselves, *inter alia,* as taxpayers. The Supreme Court found that Plaintiffs therein lacked standing both as taxpayers for reasons which are not relevant to the disposition of the case at hand and, as well, because they had failed to establish an "injury in fact."

The Supreme Court rejected the implication that because the Establishment Clause was in issue, that the standing requirements under Art. III were lessened. *Id.* at 484, 102 S.Ct. at 765. The Plaintiffs in the instant lawsuit are in the same posture as the Plaintiffs in the *Valley Forge:* they have alleged a violation of the Constitution but they have not alleged an injury in fact.

None of the three named Plaintiffs have claimed that they approached CASP for the purpose of presenting a program of his own over CASP's channel. They have not even intimated that should they so apply, that it is their belief that such request would be denied. Giving the affidavits of Cavileer and Houle their broadest interpretation, we find that their only claims are that they have been denied membership in CASP or were told they were ineligible, respectively.

What we must not lose sight of throughout this suit is that it is Warner, not the City, who operates the cable system; that it is Warner, not the City, who gave CASP $60,000 and a channel. Plaintiffs concede that Warner is a private corporation and make no attempt to clothe Warner with the garment of state action. In fact, Warner's system is, as well, a private corporation, which differs considerably from that of other private broadcasting corporations in that one must be a paying subscriber in order to tune into any one of Warner's 60 channels.

Because Plaintiffs lack standing as taxpayers and have not made the requisite showing of an "injury in fact" which is required by Art. III as well as the cases cited herein which have interpreted Art. III, Defendants' Motion for Summary Judgment must be GRANTED.