In re HOSPITALITY LTD. t/d/b/a Hospitality Inn, formerly t/a Sheraton Inn of St. Clairsville, Debtor.

In re WETZEL SPRING IMPROVEMENT CORPORATION, Debtor.

HOSPITALITY LTD. and Wetzel Spring Improvement Corporation, Movants,

v.

FIDELITY SAVINGS AND LOAN CO.; Belmont Federal Savings and Loan Association; North Akron Savings and Loan Company; Tri–State Asphalt Corporation; Belmont County National Bank; Equity Management Associates, Inc.; the RCA Service Company., a Division of RCA Corporation; and the Bank of Wheeling, Respondents.

Bankruptcy Nos. 87–1665, 87–1747. Motion No. 87–5896.

United States Bankruptcy Court, W.D. Pennsylvania.

May 3, 1988.

60

F. Scott Gray, Sable, Makaroff & Libenson, Pittsburgh, Pa., for debtor.

William E. Kelleher, Jr., Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Sav. and Loan Group.

M. Bruce McCullough, Buchanon Ingersoll, Pittsburgh, Pa., for Concord Ltd.

Robert J. Samol, Tri–State Asphalt Corp., Wheeling, W.Va., for Tri–State.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is the Motion of Concord St. Clairsville Limited Partnership ("Concord Limited") for reimbursement of administrative expenses from secured assets, pursuant to 11 U.S.C. § 506(c). Alternatively, Concord Limited seeks nunc pro tunc appointment as a professional, pursuant to § 327, and approval and payment of fees and expenses as allowed under § 330 and 503. Objections to said requests have been raised by the debtor; the secured creditors (the "Savings and Loan" Group or the "S and L" Group); and Tri–State Asphalt Corporation ("Tri–State"), a general unsecured creditor and eventual purchaser of Debtor's assets. Additionally, the S and L Group has raised the question of Concord Limited's standing to pursue this action on behalf of Concord Hotels, Inc., and in place of the Trustee.

A hearing was held at which time testimony was taken. The parties have submitted briefs of the various legal issues presented. Based upon the evidence presented and this Court's further research, we find that Concord Limited does

not have standing to bring this action. Additionally, however, we note that if Concord Limited did have standing, its claim for administrative payment from the S and L Group's security would fail, as would its request for nunc pro tunc appointment.

## FACTS

The Debtor (as consolidated) owned and operated a 118 room motel in St. Clairsville, Ohio. The S and L Group was owed in excess of $1.9 million, secured by the Debtor's real property. For a variety of reasons, including substantial new competition, the Debtor was having financial trouble. In September of 1986, the S and L Group instituted foreclosure proceedings.

Early in 1987, the Debtor began to negotiate a sale of its motel to Concord Limited for $1,730,000.00. Debtor advised the S and L Group of same and that they would receive $1,000,000.00 from said sale. The S and L Group advised Debtor that such a sum was unacceptable.[1]

In spite of the S and L repudiation, and in anticipation of the sale, Concord Limited and the Debtor agreed that a new management team would takeover the motel's operations. Concord Limited sought to have Concord Hotels, Inc. ("Concord Hotels") installed as manager immediately, with the understanding that Concord Hotels would continue to manage the property for Concord Limited after the sale was completed.

The Management Agreement was negotiated between the Debtor and Concord Hotels. Among the many and various rights and responsibilities negotiated, the Management Agreement clearly stated that Concord Hotels would retain all profits and sustain all losses resulting from its management of the motel. Debtor was to remain responsible for real estate taxes, personal property taxes, insurance premiums, and debt service on the outstanding mortgages. All other debts and liabilities incurred in the operation of the motel were to be borne by Concord Hotels; the opera-

tion was to include marketing, legal work, personnel, rental collections, purchasing, maintenance and repairs. The Debtor was not to advance any funds whatsoever. In addition, the Agreement states that if the profits were insufficient to maintain the motel at any time, Concord Hotels would supply the necessary working capital; the Agreement does not speak to the source of said funds.

The final paragraphs of this Agreement speak to the issue of bankruptcy. Specifically, the parties agreed that the Debtor would file bankruptcy, and that the Debtor would *not* seek rejection of the Management Agreement. There is no mention of administrative expense payment, nor appointment of professional persons. The S and L Group had no knowledge of the Management Agreement or of Concord Hotels until they were so advised by their appraiser, on or about June 23, 1987.[2]

The Management Agreement was executed on June 18, 1987. Debtor filed bankruptcy on June 25, 1987. Thereafter, on July 2, 1987, Debtor filed its Motion to Sell its Real and Personal Property Free and Clear of Liens, and to Assume the Management Agreement with Concord Hotels. The S and L Group filed an Objection to said Sale and a Motion for Relief from Stay or Adequate Protection. As of the bankruptcy filing date, Debtor owed the S and L Group in excess of $2 million.

The auction sale occurred on July 28, 1987, at which time Tri–State out bid Concord Hotels by submitting the winning bid of $1,755,000.00. The Court Order, pursuant to the request of the Debtor and Concord Hotels, allowed Concord Hotels to continue its management until August 10, 1987.

On October 19, 1987, Concord Limited filed a Motion for Reimbursement of Administrative Expenses. The hearing on this matter followed.

---

**1.** While the S and L Group was advised of the pending sale, they did not know the name and financial strength of the purchaser until some time shortly before the bankruptcy filing.

**2.** The S and L Group hired said appraiser in conjunction with the foreclosure proceedings discussed *supra.*

## I. STANDING

The S and L Group has challenged Concord Limited's standing to bring the instant motion, asserting that Concord Hotels, the property manager, is the real party in interest. Concord Limited cites *In re McKeesport Steel Castings, Co.*, 799 F.2d 91 (3rd Cir.1986) for its contention that the rule barring individual creditors from acting in lieu of the Trustee is often disregarded when sufficient reason exists to permit same.

■ Standing generally requires an allegation of present or immediate injury in fact, a personal stake in the outcome, a causal connection between the injury and the challenged action, and a likelihood of redress by a favorable decision. *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *New Jersey Speech–Language–Hearing Association v. Prudential Insurance Co.*, 724 F.2d 383, (3rd Cir.1983); *Cavileer v. City of Pittsburgh*, 569 F.Supp. 208 (W.D.Pa. 1983), *aff'd* 727 F.2d 1099 (3rd Cir.1984).

Additionally, the Supreme Court has often stated that the Plaintiff must assert his own legal rights and cannot rest his claim on the legal rights of third parties. *Phillips Petroleum Co., supra; Secretary of State of Maryland v. Joseph H. Munson, Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Valley Forge, supra; Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1976).

■ In the case at bar, we have two separate entities: Concord Limited, a limited partnership; and Concord Hotels, a separate and distinct corporate entity. The management agreement was negotiated between the Debtor and Concord Hotels. Concord Hotels took responsibility for the Debtor's expenses, except taxes, insurance, and debt service, in return for Debtor's receipts. At the eleventh hour, Concord Limited asserts that under a submanagement agreement, Concord Hotels turned over all profits to Concord Limited in return for a percentage fee, and Concord Limited paid all debts and liabilities.

The receipt of such information at this late date can be seen as nothing more than self-serving verbage. Concord Limited and Concord Hotels obviously were formed separately and distinctly with a purpose in mind: to say otherwise now is not credible. Therefore, Concord Hotels is the real party in interest possessing standing to bring this action.

An exception to this hard and fast rule has emerged under the doctrine of *jus tertii* standing. Reliance upon *jus tertii* requires the relationship between the litigant and the injured party to be inextricably bound, making the litigant as effective a proponent as the real party. Furthermore, the real party must be unable to represent his own interest. Even where the parties are very closely related, the real party must assert his own right, unless a genuine obstacle prevents said assertion. *Joseph H. Munson, Co., supra; Singleton v. Wulff, supra.*

No showing has been made which would lead to a determination that Concord Hotels was or is unable to pursue its own interest. Therefore, even if Concord Limited and Concord Hotels are completely intertwined, any action must be brought by Concord Hotels, unless Concord Hotels is prevented by a genuine obstacle. None being asserted, this Court finds that Concord Limited does not have standing to bring this action.

Having made this decision, we further analyze the reasons that Movant's request would be denied even absent to standing issue.

## II. SECTION 506(c)

Concord Limited has asserted a right to compensation for expenses incurred in preserving the bankruptcy estate. The estate is unable to support such compensation without relying upon funds allocated as security to the S and L Group. Said funds

are the remaining proceeds from the sale of Debtor's hotel, on which the S and L Group held security interests in the form of mortgages.

Generally, administrative expenses are not chargeable against a secured creditor's collateral. *Matter of Trim–X, Inc.,* 695 F.2d 296 (7th Cir.1982); *Matter of F/S Airlease II, Inc.,* 59 B.R. 769 (Bankr.W.D. Pa.1986), *rev'd on other grounds,* 844 F.2d 99 (3rd Cir.1988); *In re Chicago Lutheran Hospital Association,* 75 B.R. 854 (Bankr. N.D.Ill.1987); *In re Fiberglass Industries, Inc.,* 74 B.R. 738 (Bankr.N.D.N.Y.1987); *In re Birdsboro Casting Corporation,* 69 B.R. 955 (Bankr.E.D.Pa.1987); *In re T.P. Long Chemical Inc.,* 45 B.R. 278 (Bankr.N. D.Ohio 1985).

An exception to that policy has been statutorily created by 11 U.S.C. § 506(c) which states:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

■ In order to recover expenses under 506(c), the Movant must prove that the expenses were reasonable, necessary, and beneficial to the creditor. *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d 546 (9th Cir.1987); *Matter of Trim–X, supra; In re Settles,* 75 B.R. 229 (Bankr.C. D.Ill.1987); *In re J.P. Construction Co.,* 54 B.R. 895 (Bankr.W.D.Va.1985); *In re AFCO Enterprises, Inc.,* 35 B.R. 512 (Bankr.D.Utah 1983). Movant must show that the expenses occurred primarily for the benefit of the creditor, and directly benefitted the creditor. Indirect, uncertain or speculative benefits cannot be recovered. Incidental benefits which accrue to the creditor are generally not recoverable. *In re Cascade Hydraulics, supra; Matter of Trim–X, Inc., supra; In re Lindsey,* 59 B.R. 168 (Bankr.C.D.Ill.1986); *In re Wyckoff,* 52 B.R. 164 (Bankr.W.D.Mich.1985). Additionally, we have joined several other courts in the position that the consent of the secured creditor is a controlling factor in determining whether recovery under 506(c) is appropriate. *Matter of Trim–X, supra; Matter of F/S Airlease II, Inc., supra; In re Wyckoff, supra; In re Hotel Associates, Inc.,* 6 B.R. 108 (Bankr.E.D.Pa. 1980).

■ Preservation of the going concern value of a business can constitute a benefit to the secured creditor. *In re McKeesport Steel Castings Co., supra; In re Annett Ford, Inc.,* 64 B.R. 946 (D.Neb.1986); *In re AFCO Enterprises, Inc., supra.* However, such a determination is factual and must be made on a case-by-case basis.

■ From the outset it was clear in this case that the entire operation was created and maintained for Concord Limited's benefit and only for Concord Limited's benefit. The management company put in place by Concord Limited was installed to make the transfer of ownership as smooth as possible. If Concord Limited had not been planning to purchase the hotel, Concord Hotels would never have become the management team.

Debtor was relieved of any responsibilities, debts and expenses which would inure to Concord Limited's benefit upon transfer of ownership, i.e. maintenance, advertising, personnel, and purchasing. Debtor retained responsibility for taxes, insurance and mortgage debt. Not surprisingly, the sale negotiated between the Debtor and Concord Limited provided for a bankruptcy sale, free and clear of all liens and encumbrances. Therefore, Concord Limited would *never* be responsible for any sums owing to taxing bodies or the S and L Group; those parties would be relegated to seeking funds from the sale proceeds. The sale was negotiated for $1,730,000.00, and the S and L Group was owed in excess of $1,900,000.00. When told of the sale, and the anticipated distribution of $1,000,000.00 in full satisfaction of said debt, the S and L Group refused to consent.

When the management agreement was negotiated, no consent from the S and L Group was either sought or obtained. In fact, the management group was in place for almost a week before the S and L Group became cognizant of their activities.

Even then, the S and L Group received notice only from their own appraiser.

Based upon these facts it is clear that the continued operation of the hotel by Concord Limited and/or Concord Hotels was not done primarily for the benefit of the S and L Group and did not provide them a direct benefit. Frankly, it does not appear that the S and L Group received any benefit, nor did they provide any consent for the process.

Even if Concord Limited argued that silence is equivalent to acquiescence, the argument would fail. Silence/acquiescence presumes notice or knowledge. As the S and L Group had no notice prior to June 23, 1987, they could not silently consent. The bankruptcy was filed two days later. One week later when the Debtor filed the motion to sell the hotel and assume the management contract, the S and L Group filed an objection. To read any of the S and L Group's actions as consent is ludicrous.

Concord Limited asserts that a benefit was provided by keeping the business as a going concern. *McKeesport Steel Castings, Co., supra.* In this case we disagree. Concord Limited's only concern in keeping the hotel open and operating was to purchase it. There was no anticipation by the Debtor or by Concord Limited that the continued operation of the hotel would bring any greater sum to the S and L Group than that already offered—$1,000,-000.00. The S and L Group was on the threshold of completing its foreclosure proceedings, would have owned the property outright, and could have operated the hotel and restaurant/lounge or sold same. Given the property valuation of over $1,500,-000.00, it seems likely that the S and L Group would have salvaged for itself at least as much as, if not more than, that provided by Concord Limited.[3]

Additionally, the hotel was operational before Concord Limited came into the picture. Concord Limited paints a bleak picture of 25 rooms without air conditioning, insufficient changes of linen for all 118 rooms, and no restaurant facilities. St. Clairsville is not a high volume tourist area, like New York or Boston. It is a small community where the hotels and motels average only 50% occupancy. In order for this facility to be a going concern under the facts of this case, it was not necessary to have all 118 rooms ready for occupancy. If 25 of the rooms are without air conditioning, the hotel would need to fill 93 rooms before running into difficulty. Given the state of affairs of the various facilities in the area, the chances of such difficulty were less than remote. Similarly, if this hotel averages only 45% occupancy, it is not necessary to have a complete change of linen for all 118 rooms. While the hotel had no operative restaurant, it was within close proximity to a regional shopping mall and several restaurants. Being the lowest priced facility in a small town and easily accessible from a major interstate highway, make it attractive to overnight travellers. "Going concern" value, as discussed in *McKeesport Steel Castings Co., supra,* does not mean upgrading; it requires only maintaining.

This Court is also at a loss to determine the benefit received by the S and L Group as a result of travel costs and supervision of "capital improvements." These line items were incurred *only* for Concord Limited's benefit. These expenditures did not even incidentally benefit the S and L Group; and could not be compensable under any reading of 506(c).

It appears to this Court that Concord Limited never intended or anticipated submitting requests for reimbursement for any of these expenses; they did intend to reap the full benefit of same. It was only after they came away from the sale empty-handed that they sought recompense. Concord Limited took a calculated risk and lost. The secured creditor cannot be charged with the financing of a risk taken without their consent and, to the contrary, over their objection.

---

**3.** This property valuation and subsequent references to vacancy rates and marketability were obtained from the property appraisal of William J. Lemmon, submitted under affidavit and filed in this case at Docket Number 25.

### III. NUNC PRO TUNC APPOINTMENT

■ As an alternative ground for recovery, Concord Limited seeks appointment as a professional *nunc pro tunc* to the filing of the bankruptcy. Bankruptcy Courts have the power to grant *nunc pro tunc* appointment of counsel and other professionals in limited cases where extraordinary circumstances are present. *In re F/S Airlease II, Inc.*, 844 F.2d 99 (3rd Cir.1988); *Matter of Arkansas Co.*, 798 F.2d 645 (3rd Cir.1986). In order to be appointed *nunc pro tunc*, the Court must determine that prior approval would have been appropriate under 327, and that the delay in seeking approval was due to hardship beyond the professional's control. *In re F/S Airlease II, Inc.*, *supra*; *Matter of Arkansas Co.*, *supra*. Pursuant to 327 of the Code, the Bankruptcy Court may grant retroactive approval only if it finds, after a hearing, that it would have granted prior approval. That determination requires proof that the applicant is "disinterested", does not possess an adverse interest, and performed services which were necessary under the circumstances. *Matter of Arkansas Co.*, *supra*.

■ A party is "disinterested" if he has no material interest adverse to the estate or any class of creditors as a result of any direct or indirect relationship to, connection with or interest in the debtor. 11 U.S.C. 101(13). From a review of the previous discussions in this Opinion it is abundantly clear that Concord Limited is *not* a disinterested person. The relationship between Concord Limited and the Debtor commenced prepetition. Their connection, until the date of sale in this Court, was substantial; in fact, Concord Limited was thoroughly involved in the actual bankruptcy filing. Concord Limited's actions stayed the S and L Group's foreclosure proceeding and provided them with a distribution of less than 50%. It would be very difficult to find a non-insider who was any more interested than Concord Limited.

Based on this analysis, this Court would not have been able to approve Concord Limited's appointment, even if the request had been made in a timely fashion.

■ Assuming *arguendo*, we were to find that Concord Limited *was* disinterested, no *nunc pro tunc* approval could be granted. The law in this Circuit is *very clear*: the lack of prior approval must be the result of extraordinary circumstances— hardship beyond the professional's control. *In re F/S Airlease II, Inc.*, *supra*; *Matter of Arkansas Co.*, *supra*.

In *F/S Airlease*, the Third Circuit denied such approval to a broker, stating as follows:

> Simon is a sophisticated businessman who was represented by attorneys throughout the course of his dealings with Airlease. This is not a case in which a person, completely ignorant of the requirements of the Bankruptcy Code and without legal representation, justifiably relied on the superior expertise of another. See *In re Freehold Music Center, Inc.*, 49 B.R. 293 (Bankr.D.N.J.1985). The evidence here suggests that Simon's attorney was familiar with the requirements of the Bankruptcy Code, including the requirements of section 327(a).

In the case at bar we are faced with a highly sophisticated group of businesspeople. At the hearing on this matter, witnesses for Concord Limited testified that they had been involved in the purchase of several other hotel facilities in other parts of the country.

Concord Limited was also represented by two law firms: Kohrman, Jackson & Krantz, and Buchanan Ingersoll, P.C. While this Court is not aware of the scope of the Kohrman firm's practice, we know that counsel from Buchanan Ingersoll hold themselves out as some of, if not *the* premier bankruptcy practitioners in this district. We are absolutely certain that *if* Concord Limited had ever intended to be appointed as a professional in this case, Buchanan Ingersoll would have attempted to secure such appointment.

Therefore, under the law as enunciated in this Circuit, a motion for *nunc pro tunc* appointment would of necessity be denied.

## CONCLUSION

This is a clear case of a gambler who wants to win all, but take no risks. Concord Limited wanted to buy this hotel and expected to make it a profitable entity. To that end, they invested substantial time and some money in the facility. Concord Limited knew that the Debtor would be filing bankruptcy and knew that a purchase through bankruptcy carried with it certain benefits (taking free and clear of liens and encumbrances), and certain risks (the Court may not approve the sale or the high bid may be made by another entity). Having lost the game, Concord Limited now wants the House to return the ante. Keeping in mind the caveat, "Do not risk what you cannot afford to lose," an appropriate Order will be issued.

## ORDER OF COURT

AND NOW, this 3rd day of May, 1988, in accordance with the foregoing Memorandum Opinion of this same date it is hereby ORDERED, ADJUDGED, and DECREED that Concord Limited's Motion for Administrative Expense is DENIED.