In re BLUE RIDGE MOTEL
ASSOCIATES, Limited
Partnership, Debtor.

Robert G. SABLE, Esquire, and Sable, Makoroff, Sherman and Gusky, P.C., f/k/a Sable, Makoroff & Libenson, Movant,

v.

LIBERTY SAVINGS BANK,
Respondent.

Bankruptcy No. 89–02413 JKF.
Motion No. 90–5904–M.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 2, 1991.

**478**

Michael McGreal, Sable, Makoroff, Sherman & Gusky, P.C., Pittsburgh, Pa., for Robert G. Sable, Esq., etc.

John J. Winter, Baskin, Flaherty, Elliott & Mannino, P.C., Pittsburgh, Pa., for respondent.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the Court is the objection of Liberty Savings Bank (Liberty) to payment of Debtor's counsel's fees from

1. The fee application and the objection to it were filed while the case was in Chapter 11.

Liberty's cash collateral.[1] The objection is sustained for the following reasons.

### I. *Facts*

On September 15, 1989, Blue Ridge Motel Associates (Debtor) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On or about September 20, 1989, Liberty filed an Emergency Motion for Relief from the Automatic Stay and for Adequate Protection in order to record a deed in lieu of foreclosure which the Debtor executed prepetition. Also prepetition, Liberty agreed to forebear from recording the deed as long as Debtor remained current on its payments.

In December of 1989, after notice and hearing, the Court entered an Order determining that Liberty had a valid perfected security interest in all of the Debtor's assets, including cash collateral comprised of, *inter alia*, the Debtor's motel room revenues. The Court also found that testimony of appraisers established that Liberty was oversecured but, to protect its position, was entitled to adequate protection in the form of periodic payments which were kept lower than the contract rate for several months. In May of 1990 when the payments at the contract rate were to resume the Debtor requested a modification of the Adequate Protection Order because it could not meet the payments required thereunder. Liberty renewed its request for relief from stay. The Court denied the Debtor's motion and continued the original Adequate Protection Order in full force and effect. At the same time, Liberty's objections to the Debtor's Disclosure Statement were sustained. Debtor was given the opportunity to file amendments. The request for relief from stay was continued until October of 1990 in conjunction with the hearing on the adequacy of the amended disclosure statement. Debtor failed to file the amendments, so the hearing proceeded on the request for relief from stay. Debtor then conceded that Liberty was undersecured by approximately one million dollars based upon Liberty's original calculation of its claim. As a result the Court entered

The case was converted to Chapter 7 four days later.

two orders. The first granted relief from stay to Liberty and directed Debtor (a) to surrender to Liberty all real and personal property subject to Liberty's security interest and (b) to segregate and deliver to Liberty for placement in an interest bearing escrow account all cash collateral, including receivables previously collected and those to be collected. Liberty had a perfected security interest in receivables but Debtor requested an opportunity to review the funds on deposit to determine if any of the proceeds were unencumbered. The second order converted the case to a Chapter 7 but delayed the effective date to November 5, 1990, to facilitate the transfer of assets.

On November 1, 1990, the Court conducted a hearing on Debtor's counsel's fee application for Chapter 11 services. The fee application sought compensation of $46,120.50 for services rendered and $5,437.87 for expenses advanced by counsel from August 1, 1989, through July 31, 1990. Liberty objected to payment of compensation or expenses from its cash collateral. It is now clear that there are no unencumbered assets from which any Chapter 11 administrative claims can be paid.

## II. *Discussion*

The issue before the Court is whether § 506(c) of the Bankruptcy Code permits Debtor's counsel to be paid his Chapter 11 fees from the secured creditor's collateral after the case has been converted to a Chapter 7.

■ Generally, expenses for the administration of a bankruptcy may not be charged against a secured creditor's collateral. *Matter of F/S Airlease II, Inc.*, 59 B.R. 769, 778 (Bankr.W.D.Pa.1986), *reversed on other grounds*, 844 F.2d 99 (3d Cir.1988), *cert. denied* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). A statutorily-created exception to this policy provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C.A. § 506(c).

■ The burden of proving the benefit from the Debtor's counsel's services to the secured creditor is upon the movant. *In re Hospitality, Ltd.*, 86 B.R. 59, 63 (Bankr.W. D.Pa.1988). The United States Court of Appeals for the Third Circuit held that proof that a party's actions served to preserve the going concern value of a business can constitute proof of such a benefit. *In re McKeesport Steel Castings Co.*, 799 F.2d 91 (3d Cir.1986). In *McKeesport* the debtor voluntarily instituted Chapter 11 proceedings. Equitable Gas sought to terminate service but the court denied that request and approved a payment schedule. The Debtor failed to adhere to the schedule. Equitable continued to supply gas as required by the order but renewed its petition to terminate service. The court again denied the petition and arranged another payment schedule. The court's purpose in so doing was to enable the Debtor's business to be sold as a going concern. After the sale was confirmed Equitable filed a motion for payment of its post-petition claim. The bankruptcy court approved the payment. The district court reversed and the decision was appealed.

The Court of Appeals chose to follow a broad interpretation of "benefit" under § 506(c). Quoting the bankruptcy court, the Court of Appeals found that Equitable's provision of gas service in fact benefitted the secured creditors in that it "preserved the Debtor's business and permitted the sale of the assets as a going concern which provided a greater return to the secured parties than they would have received in other circumstances." *Id.* at 95. The Court of Appeals acknowledged the existence of a stricter test of benefit but expressly declined to adhere to it. *Id.* The stricter test is expressed in *In re Flagstaff Food Service Corp.*, 739 F.2d 73 (2d Cir.1984), which held that the claimant must establish (a) that expenses were incurred primarily for the benefit of a secured creditor and (b) that they directly benefitted the secured creditor.

We are aware that the Bankruptcy Court for the Eastern District of Pennsylvania views *McKeesport* as rejecting the *Flagstaff* test. *In re Birdsboro Castings Corp.*, 69 B.R. 955, 959 (Bankr.E.D.Pa. 1987) ("one need not show that the funds were expended primarily" for the creditor's benefit but the obligation to show a direct benefit to the creditor remains.) *See also In re Corona Plastics, Inc.*, 99 B.R. 231 (Bankr.D.N.J.1989) (the *McKeesport* court applied an expansive formula for determining benefit). However, in the case at bench, we need not express the nature of the test in the Third Circuit because we cannot find *any* benefit to the secured party provided by Debtor's counsel.

■ In awarding fees under § 506(c) a court has the ability to review the proceedings in their entirety and so the determination of benefit, whether according to a "primary and direct" test or some more liberal standard, involves an examination of the effect of the service or conduct which the claimant asserts entitles it to payment from the secured party's collateral. Under either approach, the services rendered by Debtor's counsel fail to meet the mark. By virtue of the conversion to Chapter 7 and the asset turnover pursuant to the relief from stay order, Liberty obtained that which it would have received if no bankruptcy had been filed or if it had been granted relief from stay as requested at the very outset of the case. There was no sale of a going concern in this case. When the bankruptcy was filed Liberty was on the threshold of obtaining ownership and could have operated or sold the Debtor's business upon recording its deed in lieu of foreclosure. *See In re Hospitality, Ltd.*, 86 B.R. 59 (Bankr.W.D.Pa.1988). Furthermore, at the outset of the case Debtor's appraiser testified that the property was worth $4.4 million. However, the plan of reorganization which Debtor filed in the Chapter 11 phase of the case proposed to treat Liberty as secured only to the extent of $2.7 million. The sum owed to Liberty when the bankruptcy was filed was over $3.7 million. Debtor was never able to consummate a sale of the motel while in operation, could not meet its projections for revenues during the Chapter 11, could not obtain financing, and could not comply with the adequate protection order. Liberty did not receive full contract rate payments throughout this bankruptcy. Based on these facts we conclude that the market for and value of Liberty's assets eroded during the bankruptcy. Thus, we find that Liberty suffered a detriment as a result of the diminution in value of its collateral and through Debtor's eventual failure to make adequate protection payments. In the case at bench, Debtor's counsel's efforts were directed solely towards the interest of the Debtor in retaining the property until a sale or refinancing[2] could be effected. The primary reason for Debtor's interest was something other than to enhance the position of Liberty.

■ When counsel represents a debtor-in-possession, he incurs the risk that reorganization will not be successful and that there will be insufficient funds to pay Chapter 11 administrative expenses. The secured creditor cannot be charged with financing that risk when it is taken without its consent and over its objection. *See In re Staunton Industries, Inc.*, 75 B.R. 699 (Bankr.E.D.Mich.1987). This is nowhere more evident than in the situation where no benefit has been conferred upon the secured creditor. *See, In re Hospitality, Ltd.*, 86 B.R. at 64. *Cf. In re Staunton Industries, Inc.*, 75 B.R. 699 (Bankr.E.D. Mich.1987) (the benefit conferred must have enabled the creditor to realize as much or more than it would have by foreclosing on its collateral).

2. Even if the Court were to accept Debtor's argument that the value did not diminish but that Debtor's appraiser was too aggressive in his assumptions based on market conditions, the fact remains that the property did not *increase* in value. Furthermore, Liberty was deprived of the use of its collateral much longer than it would have been but for the bankruptcy filing.

Liberty incurred counsel fees in the course of protecting its secured position before this Court which would not have been required absent a bankruptcy. Liberty had to monitor Debtor's management of the property which created additional expense. Thus, Liberty gained nothing of benefit from this experience or from Debtor's counsel's participation in it.

In the instant case nothing Debtor's counsel did had any effect which could be construed as a benefit to Liberty. Debtor's attorney performed only those functions which normally are performed by debtor's counsel in reorganization cases. The functions were executed in and for the interest of the then debtor-in-possession. Counsel's actions did not enhance the value of the assets or provide economic gain to Liberty over that which Liberty otherwise would have received. In fact, the ultimate value of the collateral was far short of that advocated by the Debtor approximately one year earlier. Liberty was delayed over a year in its attempts to obtain the release of its collateral which, but for the bankruptcy, it would have obtained simply by recording the deed it held. Furthermore, Liberty did not consent to the use of its collateral and repeatedly sought relief from stay. Therefore, this Court finds that the actions of Debtor's counsel did not provide a benefit to Liberty. There is no basis upon which to impose the burden of Debtor's Chapter 11 counsel fees and expenses on Liberty.

III. *Amount of Debtor's Counsel's Fees*

Liberty also alleged that the amount of fees sought is excessive. We need not rule on the point because there are no funds available to pay any Chapter 11 administrative expenses in this case and any decision as to the fee amount would not affect Liberty, other creditors, or the estate. In the event that circumstances change and funds become available Debtor's counsel may move to reopen the matter and request a ruling on the reasonableness of the fees.

An appropriate Order will be entered.

### ORDER

And now, to-wit, this 2nd day of May, 1991, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that the objection of Liberty Savings Bank to the application of Debtor's counsel for payment of attorney's fees pursuant to 11 U.S.C. § 506(c) is sustained.

It is FURTHER ORDERED that the objection of Liberty Savings Bank to the amount of Debtor's counsel's fees is not addressed for the reasons stated in this opinion.

It is FURTHER ORDERED that in the event funds become available for payment of Chapter 11 administrative expenses, Debtor's counsel may request this Court to reopen the matter and to rule on the reasonableness of the fees.