In re David W. HARBAUGH and Cathy J. Harbaugh, Debtors.

David W. HARBAUGH and Cathy J. Harbaugh, Plaintiffs,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 88–297.
Motion No. 89–004M.
Adv. No. 88–490.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 11, 1989.

James C. Warmbrodt, Pittsburgh, Pa., for debtors.

Joseph F. Minni, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C.

K. Lawrence Kemp, Kemp & Kemp, New Kensington, Pa., Trustee.

Stephen I. Goldring, Pittsburgh, Pa., Asst. U.S. Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court are Plaintiffs/Debtors' *Complaint For Specific Enforcement Of The Automatic Stay*, and Defendant's *Motion For Relief From The Automatic Stay Nunc Pro Tunc*. Plaintiffs opine that the action of Defendant in offsetting a tax refund postpetition, without requesting and/or receiving court authorization to do so, is a clear-cut violation of the automatic stay. Accordingly, Debtors request Defendant be ordered to return the refund to the estate with interest.

In addition to answering the above-captioned Adversary Complaint, by first denying and thereafter admitting the basic facts, Defendant avers that approval of a request for relief from the automatic stay, so as to permit setoff, would have been approved if it had been timely requested, and accordingly, requests this Court grant said relief, *nunc pro tunc*. For the reasons hereinafter set forth, this Court determines that this tax refund must be released by the IRS. Defendant's Motion For Relief From Stay *Nunc Pro Tunc* will be denied.

## FACTS

On June 9, 1983 the United States of America, on behalf of its agency, the Internal Revenue Service ("IRS"), filed a Notice of Federal Tax Lien, in the amount of $3,910.34, relating to unpaid tax liability of the Debtors for the tax years 1980 and 1981. Thereafter, no material activity occurred between these parties, until February 5, 1988, when this bankruptcy filing occurred. The Internal Revenue Service (hereinafter "IRS") was designated a creditor in Debtors' Schedules, but was not included on the mailing matrix. As a result, the IRS did not receive immediate notice of the bankruptcy filing.

On March 21, 1988 Debtors filed their tax return for the 1987 tax year, and indicated a refund due of $1,788.74. On March 29, 1988 the IRS acknowledges that it became aware of the bankruptcy filing; however, during this same time frame, the IRS transmitted a notice to the Debtors, indicating that the refund due for the 1987 tax year was set off against the 1983 tax lien, effective March 21, 1988.

Counsel to the Debtors transmitted written notification of the bankruptcy filing to the IRS, and demanded return of the refund, first on March 29, 1988 and again on July 5, 1988. Debtors received no response from the IRS relating to these requests and/or demands; accordingly, on November 2, 1988, Debtors filed this Complaint For Specific Enforcement Of The Automatic Stay. The initial response filed by the IRS denied the material facts relating to the setoff; however, an Amended Answer was filed admitting the above facts. Concurrent with the filing of its second responsive pleading and/or on December 27, 1988, the IRS filed the instant motion for relief from stay *nunc pro tunc*. The parties agree that no material fact is at issue.

## ANALYSIS

In creating the Bankruptcy Reform Act of 1978, the drafters embarked upon a journey to harmonize three (3) distinctly separate interests, these being: general creditors, who fear a complete loss will result from an ever-increasing tax debt; the debtor, who seeks a "fresh start", free from the manacles of debt; and the public, which relies upon the distribution of the tax burden, and the collection of same to fund public works. *See United States v. Norton*, 717 F.2d 767 (3rd Cir.1983).

Congress began by creating the automatic stay, which by its own terms is exceptionally broad. It prohibits many acts by creditors, including those which seek to obtain possession of property belonging to the estate, acts to collect on prepetition

debts and acts to setoff prepetition debts owing to a debtor. *See United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985); *Norton, supra.*

Section 362(a)(7) specifically states:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor ...

The automatic stay therefore provides the debtor with a fundamental protection—an opportunity to catch his or her breath without the pursuit by creditors, including governmental agencies. Even creditors whose claims are secured under the Code must submit to the risk inherent in judicial suspension of the rights they normally would have to enforce their claims against property of the estate.

Section 362(d) provides the procedural steps for obtaining relief from the automatic stay to effectuate a setoff. The action must be instituted by a party in interest; all necessary parties must receive notice of the request; and a hearing on the motion must be held.

On November 18, 1988, three (3) of the four members of this Bench, executed an Order allowing the IRS to retain tax refunds without first complying with the requirements of § 362(d). Specifically, the Order permits the IRS to retain a refund for up to sixty (60) days after a debtor requests same. Within that sixty (60) day period, the IRS must either release the refund or obtain relief from the automatic stay in order to effectuate a setoff. If the IRS does not so act, sanctions may be imposed.

■ The IRS urged the entry of this Order upon this Court and convinced the majority of the members of the Court that such an Order was appropriate. This member of the Bench specifically declined to execute said Order, as being inappropriate and contrary to both the specific provisions of the Bankruptcy Code, granting a breathing space to a debtor, and the constitutional mandate of due process. It was clear to this member of the Court that the intent of Congress was to provide a remedy to the debtor, rather than turning the Code on its head to provide a remedy to the creditor. The due process requirements included in § 362(d) are not merely procedural niceties. Compliance with the basic prerequisites of notice and hearing is indispensable; to do otherwise is deemed improvident by this member of the Court. *See In re Willardo,* 67 B.R. 1014 (Bankr.W.D.Mich.1986); *In re IRS Liabilities and Refunds in Chapter 13 Proceedings,* 30 B.R. 811 (M.D.Tenn. 1983).[1]

■ In the instant action, however, the Standing Order was not yet in effect;[2] therefore, the IRS was bound by the strictest reading of § 362(d). After some denial and posturing, the IRS now acknowledges and concedes that its retention of Debtor's overpayment is, in and of itself, a violation of the automatic stay. This Court joins in this obvious conclusion.

Having so found, we must now determine whether the IRS is in contempt for willfully violating the automatic stay. In support of its position to the contrary, the IRS contends that a party should not be held in contempt unless a Court first gives fair warning that certain acts are forbidden. If it were not clear from the Code and the early cases that relief from stay to perform a setoff must have Bankruptcy Court approval, then clearly, in 1983, when the Third Circuit spoke to the issue in the

---

1. Standing Orders of this type were adopted in several districts: D. Colo., Sept. 19, 1984; N.D. Ohio, Apr. 18, 1980; M.D. Tenn., Feb. 28, 1983; W.D. Mich., Nov. 10, 1981; E.D. Mo., July 23, 1982; S.D. Ohio, Feb. 3, 1988.

   The Orders in the Northern District of Ohio, the Middle District of Tennessee, and the Western District of Michigan have since been vacat-

ed. Additionally, the Order in Ohio's Southern District is employed in only one of three divisions.

2. Even had the Standing Order been in effect, the IRS would have been in violation of its terms and therefore subject to sanctions, including contempt.

*Norton* case, fair warning was provided. This Court might accept the fact that the IRS did not know at the time it effectuated the setoff that a bankruptcy filing had occurred, and that the automatic stay provisions were in effect. However, the parties acknowledge that eight (8) days later, the IRS did become specifically aware of this filing, and did become specifically aware of the request for a return of the retained funds. Thereafter, a second request was made by the Debtors. Neither request was acknowledged with so much as a form letter. Only when this adversary complaint was filed did the IRS give any serious consideration to the laws of these United States, and to its potential violation of same.

The IRS contends that the offices handling main bankruptcy cases and adversary proceedings are separate and independent of one another, causing some communication problems. An innocent taxpayer should not be penalized because the tax collector neglects to tell his right hand what his left is doing. *Crum v. CIR,* 635 F.2d 895 (D.C.Cir.1980).

Had Debtors not filed this adversary, the IRS would still not have requested relief from the automatic stay and would have forever retained the refund in question. It is *only* because the Plaintiffs specifically determined *not* to pursue a finding of contempt that this Court will not so find.

■ The IRS argues that it would have been entitled to relief from the automatic stay and that a *nunc pro tunc* order is appropriate. 11 U.S.C. § 105(a). *Nunc pro tunc* orders are orders given effect as of a date in the past. The term is derived from Latin and literally translates as "now for then." *Weil v. Markowitz,* 829 F.2d 166 (D.C.Cir.1987); *King v. Ionization International, Inc.,* 825 F.2d 1180 (7th Cir. 1987); *Middleton v. Dan River, Inc.,* 617 F.Supp. 1206 (M.D.Ala.1985). Its purpose is to correct records by showing what was previously done; it is not retroactive, nor is it an alteration of substantive rights. *King, supra; Crosby v. Mills,* 413 F.2d 1273 (10th Cir.1969). Therefore, the *nunc pro tunc* order requires that the Court

have made some prior indication of its ruling. *See, Recile v. Ward,* 496 F.2d 675 (5th Cir.1974); *Middleton, supra.*

■ In the case at bar the IRS did absolutely nothing until Debtors sought a Court-ordered recovery of their refund. No attempt was made on the part of the IRS to seek relief from the automatic stay at any time from March 21, 1988 to December 27, 1988; yet at any time during that nine (9) month period, the IRS could have filed its motion, and same would have been scheduled, heard, and decided in approximately thirty (30) days. In any event, to grant relief from the automatic stay *nunc pro tunc* would be to say that said relief had actually been granted at some earlier point, presumably as of the bankruptcy filing date, but that for some reason the record does not so reflect. Relief from stay was never previously sought in this case, nor was it previously granted. Therefore, granting same, *nunc pro tunc,* would be an inappropriate use of the procedural mechanism.

In support of its position the IRS cites *F/S Airlease II, Inc., v. Simon,* 844 F.2d 99 (3rd Cir.1988); *Matter of Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir.1986); and *In re Hospitality Ltd.,* 86 B.R. 59 (Bankr.W.D. Pa.1988). These cases are inapposite to the instant case. The cited Opinions discuss the *nunc pro tunc* approval of the employment of professionals in bankruptcy cases, and contain unique and specific elements to develop a prima facie case, to-wit: (1) the Court must find that prior approval would have been appropriate; *and* (2) the Court must determine that the circumstances of the particular case are so extraordinary that *nunc pro tunc* action is warranted. *F/S Airlease, supra; Hospitality, Ltd., supra.* Contrary to the argument of the IRS, *neither* of the elements is proved in this case.

Extraordinary circumstances are just that—out of the ordinary. A review of the facts in *F/S Airlease* indicates that the present circumstances are far from extraordinary. In *F/S Airlease* the professional applicant was induced to expend his energies in order to create a benefit for the

estate. Lawyers representing various parties urged this applicant to act, as no other party could provide a similar benefit to the estate; others had attempted and failed, and/or were enjoined by the bankruptcy court from acting.

In response to these requests, the applicant went to the market place and secured a substantial and in fact the only benefit to the estate, valued in excess of ten million dollars ($10,000,000.00). When the time came for the applicant to collect his fee for providing this benefit, many of the self-same lawyers that had urged the applicant to act, now objected to his fee as he was not court-appointed.

When the issue was brought to the bankruptcy court, it was learned that some of the objecting lawyers had promised the applicant to secure court approval, and only by oversight on the part of one of the objectors, was the applicant not court-approved. The bankruptcy court determined this to be an appropriate occasion upon which to enter a *nunc pro tunc* Order. The District Court affirmed.

In reversing the Bankruptcy Court's Opinion and the District Court's Opinion, the Third Circuit found that the facts in this case *were not so exceptional* as to merit a *nunc pro tunc* approval. The *F/S Airlease* facts are substantially more egregious and exceptional than the facts of the case at hand. If a *nunc pro tunc* approval was not permitted in the *F/S Airlease* case, certainly it would not pass muster in the case in question.

The second part of the test relating to *nunc pro tunc* relief involves a determination that prior approval would have been appropriate. *In re Hospitality Ltd, supra.*

Had the IRS properly sought relief from the automatic stay, it would have done so pursuant to §§ 362(a)(7) and 553 of the Bankruptcy Code, and § 6402(a) of the Internal Revenue Code, 26 U.S.C. § 6402(a) (hereinafter "IRC"). As we have previously examined § 362(a)(7), there is no need to repeat it here.

The IRS claims entitlement to a setoff of the Debtors' tax liability against their earned refund, pursuant to § 6402(a) of the IRC which states:

> In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon against any liability in respect of an internal revenue tax on the part of the person who made the overpayment ...

█ The broad, equitable discretion of courts in recognizing setoff rights defined by common law or statute has been carried over to the Bankruptcy Code, specifically in § 553, which states:

> Except as otherwise provided in this section and in section [ ] 362 ... of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ...

Two key restrictions apply to this right of setoff:

(1) there must be mutuality of the parties; and

(2) the claims must both arise prepetition.

It is essential that both of these conditions be met, and the statutory language must be strictly construed. *In re H. Wolfe Iron & Metal Co.*, 64 B.R. 754 (Bankr.W.D.Pa. 1986). Furthermore, the application of setoff is permissive; even if both elements are met, policy reasons may argue against the granting of the right. Application lies within the equitable discretion of the court. *In re Southern Industrial Banking Corp.*, 809 F.2d 329 (6th Cir.1987); *Norton, supra; In re Academy Answering Services, Inc.*, 90 B.R. 294 (Bankr.N.D.Ohio 1988); *In re Elsinore Shores Associates*, 67 B.R. 926 (Bankr.D.N.J.1986); *H. Wolfe, supra.*

█ The issue which is disputed centers on the status of the refund as being prepetition or postpetition. If the refund is a prepetition right to payment, mutuality exists and setoff might be permitted. If the right to receive the refund arose postpeti-

tion, then mutuality of claims is lacking and setoff cannot occur.

The IRS has cited several cases for the proposition that the tax refund is a prepetition asset. *In re Ferguson*, 83 B.R. 676 (Bank.E.D.Mo.1988); *In re Eggemeyer*, 75 B.R. 20 (Bankr.S.D.Ill.1987); *In re Dominguez*, 67 B.R. 526 (Bankr.N.D.Ohio 1986); *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va. 1985). We are not persuaded by these bankruptcy cases, nor are we bound by them. This is especially true in light of the fact that none of them provides any analysis of their conclusions; they merely state that the refunds were due as of December 31st of the year in which the overpayment was made. *Ferguson* cites *Dominguez*; *Eggemeyer* and *Dominguez* cite *Conti*. The reliability of *Conti* is questionable: that Court determined that the debtors' tax *obligation* for 1977 arose on December 31, 1977; however, § 6513(b) of the IRC, and numerous cases citing same, show that taxes become due and owing on the date the tax return is due to be filed, generally on or about April 15th. Even taxes withheld during the year are not deemed paid until the following April. *Ehle v. United States*, 720 F.2d 1096 (9th Cir.1983); *In re Verran*, 623 F.2d 477 (6th Cir.1980); *United States v. Glascock*, 631 F.Supp. 383 (N.D.Ala.1986); *Graham v. I.R.S.*, 602 F.Supp. 864 (W.D.Pa.1984).

Additionally, at least one Court has determined that the debtor's right to receive a refund did not arise until the following April, making debtor's claim against the IRS postpetition. *In re Hammett*, 21 B.R. 923 (Bankr.E.D.Pa.1982).

Rather than basing the outcome of this decision on the few reported bankruptcy court decisions, we deem it appropriate to more thoroughly analyze the question.

The key issue is: when did Debtors first possess a right to a refund of their overpayment? Section 6407 of the IRC states:

The date on which the Secretary or his delegate first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

Under § 6407 the Debtors had no right to their overpayment until the Secretary's delegate authorized the scheduling of the overassessment. *Philadelphia & Reading Corp. v. Beck*, 676 F.2d 1159 (7th Cir.1982). However, the IRS cannot determine the existence of an overpayment until a refund is claimed. A refund cannot be claimed until a taxpayer has been able to determine the amount of tax owed and the amount already paid. The taxpayer cannot perform these acts without various income statements from various sources, such as employers, and financial institutions. Employers are not required to provide the requisite information to employees until January of the following year. To say that Debtors were entitled to a refund on December 31st when it was absolutely impossible for anyone to ascertain same, is to hold fast to Draconian absolutes in the face of reality. Tax consequences must follow what has actually taken place, not what might have taken place. *Central Tablet Manufacturing Co. v. U.S.*, 417 U.S. 673, 94 S.Ct. 2516, 41 L.Ed.2d 398 (1974); *CIR v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717 (1974). We cannot ignore the facts of life or the facts of this case.

Additionally, if we were to utilize the logic employed by the IRS, then it would be clear that the IRS could utilize its setoff rights even as to the first and second months of 1988, as it relates to a hypothetical 1988 tax refund, all of which flies in the face of the Congressional intent to give a debtor a reasonably speedy fresh start. In fact, a debtor would not know about his fresh start until some time in 1989, subsequent to receiving his discharge from bankruptcy.

■ Even if we were to determine that the tax refund was a prepetition asset subject to setoff, we must remember that under § 553, setoff is permissive, not mandatory; we must weigh certain policy questions, balancing the IRS's right to collect a debt through setoff with Debtors' receipt of a fresh start. *Southern Industrial Banking Corp., supra; Norton, supra;*

*Academy Answering Services, supra; Elsinore Shores, supra; H. Wolfe, supra.*

The tax debt in question relates to the tax years 1980 and 1981. Those taxes were due as of April 15, 1981, and 1982, respectively. Although a Notice of Federal Tax Lien was issued, the Debtors had no assets to which it could attach. Had the IRS not violated the automatic stay, the tax debt, as an unsecured tax in excess of three years old, would have been discharged in this bankruptcy case.

Debtors, on the other hand, have total assets, not including the refund in question, of $3,000.00. Both Debtors are unemployed and live on an income of $800.00 per month.

We recognize the equitable nature of setoff rights under § 553 of the Code, and that this Court has the discretion to deny the IRS its right to setoff if allowing same will impede the Code's rehabilitative policies and goals. *Elsinore Shores, supra.* On the scales of justice we must weigh the interest of the debtor in securing a fresh start. The principles behind the fresh start were first promulgated in writing in the Old Testament; wherein debts were forgiven on a periodic basis. Thereafter this Court is cognizant that every civilized society, from the early Romans and Greeks through our era, has determined that individuals having economic difficulties should have some right to a discharge in some form of bankruptcy or debt relief. If we must weigh the interests of the IRS in collecting its tax (and the Court acknowledges that this policy decision has substantial weight) against the interests of these Debtors in this particular case to have this meager tax refund in order to obtain a fresh start, it appears clear to the Court that the policy decision in this particular case favors the Debtor.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 11th day of May, 1989, in accordance with the foregoing Memorandum Opinion of this date evenwith, it is hereby ORDERED, ADJUDGED and DECREED that the automatic stay is specifically enforced, requiring the IRS to release the Debtors tax refund.

IT IS FURTHER ORDERED that the IRS's Motion For Relief From The Automatic Stay, *Nunc Pro Tunc,* be and is hereby DENIED.