**In re Gail J. HANKERSON, Debtor.**

**Gail J. HANKERSON, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF EDUCATION and United States Internal Revenue Service, Defendants.**

**In re Cheryl PETTIS, Debtor.**

**Cheryl PETTIS, Plaintiff,**

**v.**

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, United States Department of Education, Mitchell W. Miller, Trustee, Defendants.**

**Bankruptcy Nos. 91–12263S, 91–13760S. Adv. Nos. 91–0790S, 91–0672S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 12, 1991.

**712**

Alan M. White, Community Legal Services, Inc., Philadelphia, Pa., for Hankerson.

Michael Donahue, Community Legal Services, Inc., Philadelphia, Pa., for Pettis.

Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., for federal defendants.

K. Kevin Murphy, PHEAA, Harrisburg, Pa., for PHEAA.

Charles Coyne, Fell & Spalding, Philadelphia, Pa., trustee in Hankerson case.

Mitchell W. Miller, Philadelphia, Pa., defendant-trustee in Pettis case.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

These two proceedings present the same question: may a debtor recover a setoff of a tax refund by the United States Internal Revenue Service ("the IRS"), pursuant to 31 U.S.C. § 3720A(c) and 26 U.S.C. § 6402(d)(1), against a student loan obligation owed by the debtor to the United States Department of Education ("the DOE") occurring within 90 days of the bankruptcy filing? We answer affirmatively if the IRS had authorized the refund within the 90–day period, holding that, in that situation, the debtor may avoid such a setoff under 11 U.S.C. § 553(b). We also hold that the DOE, though a federal agency, is not immune from liability under 11 U.S.C. § 550(a) and that it is appropriate to order it to return the refund to the Debtors.

### B. PROCEDURAL HISTORIES

GAIL HANKERSON ("Hankerson") filed a voluntary Chapter 7 bankruptcy case on April 25, 1991. CHERYL PETTIS ("Pettis") filed her voluntary Chapter 7 case on July 10, 1991. Hankerson and Pettis are referenced collectively as "the Debtors." Both cases are being administered as "no-asset" cases.

Though her case was the later filed, Pettis filed the first of the two proceedings before us, on July 16, 1991. It was listed for trial on August 27, 1991. On the following day, we entered a procedural Order consistent with the parties' agreement to file a Stipulation of Facts and Opening Briefs on or before September 20, 1991, and Reply Briefs on or before October 11, 1991.

On August 27, 1991, coincidentally the trial date of Pettis' adversary proceeding, Hankerson filed the second proceeding before us. Prior to the scheduled trial date of October 22, 1991, the Defendants in that action, on October 11, 1991, filed a motion requesting the entry of summary judgment in their favor. This court responded by entering an Order of October 16, 1991, requiring Hankerson to reply to the aforesaid motion on or before October 28, 1991. Hankerson responded by filing a cross-motion seeking the entry of summary judgment in *her* favor on October 24, 1991. On November 7, 1991, the Defendants filed a Memorandum of Law in opposition to Hankerson's cross-motion.

Although the submissions by the IRS and the DOE acknowledge the identity of issues by replication of much of their respective submissions in both of these cases, the pleadings by the respective Debtors are quite distinct. Pettis named the PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY ("PHEAA"), the DOE, and the Chapter 7 Trustee, MITCHELL W. MILLER, ESQUIRE, as Defendants. She pleaded that the setoff against her was avoidable as a preference pursuant to 11 U.S.C. § 547(b). Moreover, Pettis has consistently maintained that 11 U.S.C. § 553 is inapplicable because she claims that the setoff in issue was attempted as to debts that were not "mutual." In her submissions, she never reached the issue of the avoidability of the setoff under 11 U.S.C. § 553(b).

Hankerson, meanwhile, named only the DOE and the IRS as defendants.[1] She pleaded that the setoff against her was avoidable under, alternatively, § 547(b) *or* § 553(b). In her cross-motion for summary judgment, she conceded, in contrast to Pettis, that § 547(b) is inapplicable. She then proceeded to argue the merits of her case solely on the basis of § 553(b).

## C. FACTUAL HISTORIES

The material facts of both cases are not in dispute and are quite similar. Hankerson made a $1,500 student loan, guaranteed by PHEAA and reinsured by the DOE, on December 6, 1972. Pettis entered into her student loan, in the amount of $2,500, on or about June 1, 1983, which was likewise guaranteed by PHEAA and guaranteed to PHEAA, in turn, by the DOE.

Hankerson withdrew from her course of studies on April 1, 1973, and never made a payment on her loan, which became in default on June 18, 1974.[2] Pettis graduated from the "PTC Career Institute" on February 1, 1984, and, in March, 1985, she defaulted on the loan.

PHEAA fulfilled its guarantee obligations to the respective lending banks on the Debtors' loans shortly after their defaults. On September 10, 1974, and March 26, 1985, respectively, the DOE fulfilled its respective guarantee obligations to PHEAA on the Hankerson and Pettis loans. After PHEAA made unsuccessful collection efforts, which included its obtaining a judgment against Hankerson in 1981, the Debtors' respective loans were assigned to the DOE in September, 1990. In December, 1990, the DOE referred both defaulted loans to the IRS for offsets against any federal income tax refunds filed by the Debtors, as authorized by 31 U.S.C. § 3720A(c) and 26 U.S.C. § 6402(d)(1). This procedure was pursuant to the establishment of the federal offset program in 1985.

Hankerson filed her 1990 federal income tax return on March 11, 1991. Pettis filed hers on April 11, 1991. The record does not recite the precise date, but on or subsequent to March 11, 1991, and before April 25, 1991, when Hankerson filed her bankruptcy, the IRS withheld $1,892 from Hankerson's 1990 federal income tax refund towards her student loan debt of $3,362.44. With respect to Pettis, the parties stipulated that, on May 13, 1991, prior to her bankruptcy filing on July 10, 1991, an offset of $646.76 from her tax refund was made by the IRS against her student loan debt, the balance of which was then $2,526.29. Both Debtors listed the sums offset by the IRS as property of their respective estates which was exempt from distribution to creditors under 11 U.S.C. § 522(d)(5) on their Schedules.

## D. DISCUSSION

### 1. *The instant proceedings are core matters which we can determine.*

Both Debtors aver that the instant proceedings are core matters. Pettis specifically invokes 28 U.S.C. § 157(b)(2)(F), which references actions to recover preferences, in support of this allegation.

Although we ultimately rely upon 11 U.S.C. §§ 550(a), 553(b) rather than upon 11 U.S.C. §§ 550(a), 547(b) as the basis for our decision, we note that § 553(b) is a self-contained "miniature preference provision." *In re Balducci Oil Co.*, 33 B.R. 847, 852 (Bankr.D.Colo.1983). Therefore, we conclude that 28 U.S.C. § 157(b)(2)(F) applies to these proceedings even though they are determined under § 553(b), and that the proceedings are core matters. None of the Defendants have contested this classifica-

---

1. The failure of Hankerson to name the Trustee in her case, Charles Coyne, Esquire, could have been a fatal defect. *See Krank v. Utica Mutual Insurance Co.*, 109 B.R. 668 (E.D.Pa.), *aff'd*, 908 F.2d 962 (3d Cir.1990); and *Cain v. Hyatt*, 101 B.R. 440 (E.D.Pa.1989). However, the failure of the Defendants to raise the defense that the Trustee is an indispensable party constitutes a waiver of this issue. Bankruptcy Rule 7012; Federal Rule of Civil Procedure 12(h)(2); and *In re Parker*, 80 B.R. 729, 733 (Bankr.E.D.Pa.1987).

2. Despite the staleness of this indebtedness, recent federal legislation has eliminated the running of any statute of limitations against federal assignees of student loan debts. 20 U.S.C. § 1091a(a).

tion of these actions. We will therefore proceed to determine them.

### 2. *The DOE's setoffs are avoidable pursuant to 11 U.S.C. § 553(b).*

Hankerson argues vigorously (and we think correctly) that the outcome of this proceeding may be determined solely by reference to 11 U.S.C. § 553(b). Pettis relies, instead, exclusively on 11 U.S.C. § 547(b). In both cases, the Defendants (we think correctly) cite *Lee v. Schweiker,* 739 F.2d 870, 873 n. 4 (3d Cir.1984), for the principle that "where a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights." *See also* 11 U.S.C. § 553(a) ("Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not effect any right of a creditor to offset a mutual debt"); and *In re Dillard Ford, Inc.,* 940 F.2d 1507, 1512 (11th Cir.1991).

It is of course true, as Pettis argues, that, if the Defendants had no right to effect a setoff, § 553 would not be applicable. We also believe that there is possible merit to Pettis's argument that her debt to the DOE or PHEAA is not "mutual" to the debt of the IRS to her. *See In re Mehrhoff,* 88 B.R. 922, 925–26 (Bankr.S.D.Iowa 1985). This court accepted the argument that such debts were not mutual in entering judgment in favor of a debtor challenging a setoff pursuant to 31 U.S.C. § 3120A(c) and 26 U.S.C. § 6402(d)(1) in *In re Howard, Howard v. PHEAA,* Bankr. No. 88–11951S, Adv. No. 88–0995S, slip op. at 3, 1988 WL 96197 (Bankr.E.D.Pa. Sept. 16, 1988).[3] *But see Luther v. United States,* 225 F.2d 495, 498 (10th Cir.1954); *United States v. Rinehart,* 88 B.R. 1014 (D.S.D.1988), *aff'd in part & rev'd in part on other grounds sub nom. Small Business Adm'n v. Rinehart,* 887 F.2d 165 (8th

Cir.1989); *In re Britton,* 83 B.R. 914 (E.D.N.C.1988); *In re Gore,* 124 B.R. 75 (Bankr.E.D.Ark.1990); and *In re Hazelton,* 85 B.R. 400 (Bankr.E.D.Mich.), *rev'd on other grounds,* 96 B.R. 111 (E.D.Mich. 1988). Of particular interest are two decisions which ruled against debtors situated similarly to the instant Debtors, *In re Stall,* 125 B.R. 754, 757–58 (Bankr. S.D.Ohio 1991) (debts of the DOE and the IRS found mutual); and *In re Moses,* 91 B.R. 994, 997 (Bankr.M.D.Fla.1988) (debtor concedes mutuality issue).

Although we need not and therefore do not decide the issue of whether the debts of the Debtors to the DOE and the debts of the IRS to the Debtors are in fact mutual, there is certainly a sufficiently strong assertion of a right to a setoff by the Defendants that § 553 must govern, at least in the first instance, under the holding of *Lee, supra,* 739 F.2d at 873 n. 4. Therefore, even as to Pettis, we are compelled to resort to § 553 to resolve this controversy. This analysis requires us to carefully examine § 553(b), which provides as follows:

> (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h)(2), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

---

**3.** The lack of mutuality was particularly prominent in the *Howard* case because the only defendant was PHEAA, a *state* agency, defending against a setoff of the debt by the *federal* government. As a mediate transferee of the setoff, PHEAA was properly held liable under 11 U.S.C. § 550(a)(2), pursuant to the controlling law as it existed in the Third Circuit at that time. However, since the *Howard* decision, the Supreme Court has decided *Hoffman v. Con-*

*necticut Dep't of Income Maintenance,* 492 U.S. 96, 100–04, 109 S.Ct. 2818, 2822–24, 106 L.Ed.2d 76 (1989), overruling *Vazquez v. Pennsylvania Dep't of Public Welfare,* 788 F.2d 130, 133 (3d Cir.), *cert. denied,* 479 U.S. 936, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986). *Hoffman* precludes any entry of a judgment against PHEAA under 11 U.S.C. § 550(a)(2). It also precludes any relief against PHEAA in the Pettis case.

(2) in this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

This Code section provides a mathematical formula to determine whether a creditor has improved its position as a result of the setoff in violation of § 553(b). Unfortunately, the objectivity of mathematical certainty is buried within the turgid syntax of this Code section ("if a creditor offsets ... before the date of filing ... the trustee may recover ... the amount so offset to the extent ... such setoff is less than the sufficiency on the later of— ..."). Also, the operation of this section can initially appear to work counterintuitively. When reading the words "improve his position," one might think that, if a creditor effects a setoff which allows it to receive more funds than it otherwise would have received without the setoff, § 553(b) would provide relief. However, this simplistic interpretation of the improvement of position test is not what the statute provides and, when it is so argued, such an interpretation has been properly rejected. *See* pages 718–719 *infra*.

 Section 553(b) in fact provides that the extent of a creditor's non-allowable improvement is measured only by any *change*, favorable to the creditor, of any "insufficiency." An "insufficiency" is defined as the amount by which a creditor's claim against the debtor exceeds a mutual debt owing to the debtor from that same creditor. This Code section provides, in a paraphrase which we hope is clearer than the original, that the trustee may recover the amount set off to the extent that the insufficiency on the date of the setoff ("the setoff insufficiency") is less than the insufficiency on the later of 90 days before the filing and the first date of an insufficiency during the 90–day pre-petition period ("the beginning insufficiency").

It must be emphasized, in interpreting § 553(b), that the trustee may only recover amounts where the "setoff insufficiency" is exceeded by the "beginning insufficien-

cy." The aspect of this Code section that seems counterintuitive is that, if the creditor is unsecured and the debtor does not plan to pay unsecured creditors at all, as in the instant no-asset Chapter 7 cases, a creditor receiving any setoff in the 90–day pre-petition period "improves its position" by the amount of the setoff. However, this kind of improvement in position is not within the scope of § 553(b), if the mutual debts existed prior to the 90–day pre-petition period and did not change during that period. Moreover, if § 553(b) *were* applied to any setoff which improved the creditor's position in the 90–day period, virtually all setoffs would be recoverable under its terms. In most instances, when a creditor effects a setoff against a debtor, it thereby receives more than it otherwise would receive in the course of the debtor's bankruptcy case had it not made the setoff.

However, pursuant to § 553(b), the trustee may only recover the setoff under specific circumstances. One of the circumstances in which § 553(b) does apply, and the one pertinent to the instant matters, is where the creditor's debts to the debtor increase during the 90–day pre-petition period, and that increase in indebtedness is also set off. With this explanatory introduction, we now apply § 553(b) to the facts of the individual Debtors' cases.

Pettis filed her bankruptcy petition on July 10, 1991. Pettis owed the DOE $2,526.29 90 days before she filed. On April 11, 1991, Pettis filed her federal tax return and claimed a refund in the amount of $646.76. The issue of exactly when the IRS became indebted to her for $646.76 is of paramount importance because it is determinative of the crucial issue of whether she received the setoff in the 90–day pre-petition period. Three different dates for determining the date of the IRS's indebtedness could conceivably be used. First, the last date of the tax year in question, here December 31, 1990. Second, the date that Pettis filed her tax return, April 11, 1991. Third, the date the federal government determined that a refund was due, here stipulated to have corresponded with the date the setoff took place, May 13, 1991.

In this case, as between the latter two dates, there is no practical difference in the end result. This is because either of these dates falls within the 90–day pre-petition period. Counting backwards from July 10, 1991 (and not including July 10 in the computation, *see* Bankruptcy Rule 9006(a)), April 11, 1991, is the 90th day. *See Nelson Co. v. Amquip Corp.*, 128 B.R. 930, 937–38 (E.D.Pa.) (90–day preference period is measured by counting backwards from the filing date).

However, if the first date is used as the date that the IRS's debt became due to her, the "beginning insufficiency" in the Pettis case would be $1,880.55 ($2,526.29 − $646.76). On the date of the setoff, May 13, 1991, the "setoff insufficiency" would also be $1,880.55 ($1,880.55 − $0). Since the "beginning insufficiency" would not exceed the "setoff insufficiency," no recovery from the DOE would be allowed under § 553(b) if the first date is used.

Again, if either of the latter two dates is utilized, a different result follows. Then, the "beginning insufficiency" would be the entire student loan obligation amount of $2,562.29, as no obligation would be owed to Pettis by the IRS on the 90th pre-petition day. During the 90–day pre-petition period, a debt arose owing from the IRS, to Pettis of $646.76. Therefore, the "setoff insufficiency" would be $1,880.55 ($2,526.29 − $646.76). Since the "beginning insufficiency" would be exceeded by the "setoff insufficiency" by $646.76, that amount would be recoverable.

In *In re Hammett*, 21 B.R. 923, 925 (Bankr.E.D.Pa.1982), *rev'd on other grounds*, 28 B.R. 1012 (E.D.Pa.1983), former Judge William A. King, Jr. of this court held that a debtor's "right of refund did not arise until eight (8) months after the filing of the petition," *i.e.*, until April following the tax year for which a refund is filed, the day that a tax return is due for the preceding year. Thus, Judge King concluded that "[t]he debtor's claim against the IRS did not exist before the commencement of the case." *Id.*

Citing favorably to *Hammett*, which is the only case arising in this jurisdiction determining the issue of when an income tax refund is considered payable by the IRS, the same result is reached in *In re Harbaugh*, 99 B.R. 671, 676 (Bankr. W.D.Pa.), *rev'd*, 1989 WL 139254, 1989 U.S.Dist. LEXIS 16506 (W.D.Pa.1989), *aff'd*, 902 F.2d 1560 (3d Cir.1990). In that case, the Honorable Bernard Markovitz cites to 26 U.S.C. § 6407 and holds that a taxpayer is not deemed to have received a tax refund "until the Secretary's delegate authorized the scheduling of the overassessment." *Id.*

The authority relied upon in *Harbaugh*, 26 U.S.C. § 6407, provides as follows:

The date on which the secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

As Judge Markovitz correctly pointed out in *Harbaugh*, the IRS can not determine the existence of a tax overpayment until a return has been filed, mainly because a refund is dependent on many factors beyond the knowledge of the IRS on the last day of the tax year, *e.g.*, the amount of wages withheld during the tax year and the existence of any creditors or exemptions and income from other sources. *Id.* Much of this information is not available to the taxpayer or the IRS until after the close of the tax year. Additionally, taxes withheld at the source during the tax year are not deemed paid until the date that the taxpayer's return is due. 26 U.S.C. § 6513. To hold that a refund arises on the last day of the taxable year is contrary to these provisions of the Internal Revenue Code ("the IRC") and is impractical in terms of the actual determination of the refund.

We acknowledge that the district court's decision in *Harbaugh* and a few courts in other jurisdictions have held to the contrary. *See In re Rozel Industries, Inc.*, 120 B.R. 944, 949–51 (Bankr.N.D.Ill.1990); *In re Eggemeyer*, 75 B.R. 20, 21–22 (Bankr. S.D.Ill.1987); and *In re Conti*, 50 B.R. 142, 148 (Bankr.E.D.Va.1985). The *Rozel Industries* court, while observing that its ruling is inconsistent with the principle that

interest cannot accrue in favor of the IRS until the later of the deadline for filing, or the actual date of the filing of, a return, 26 U.S.C. § 6611, reaffirms its prior holdings that the end of the tax year be used because this "creates a bright-line test which is easily applied." 120 B.R. at 951. *Conti* simply holds that § 6407 of the IRC does not govern the issue of when an obligation arises under § 553 of the Bankruptcy Code. 50 B.R. at 148. *Eggemeyer* relies heavily upon *Conti*. 75 B.R. at 21–22.

 However, setoff is permissible under the Bankruptcy Code only if it is allowable under applicable non-bankruptcy law. *See In re Lessig Construction, Inc.*, 67 B.R. 436, 441 (Bankr.E.D.Pa.1986). We believe that reference to the IRC is therefore appropriate to determine the date when an income tax refund is due from the IRS to a taxpayer. This is especially so because a debt must be "absolutely owing" at the time of the debtor's filing to be considered a pre-petition setoff. 4 COLLIER ON BANKRUPTCY, ¶ 553.10, at 553–51 (15th ed. 1991). The fact that the end of the tax year makes setting the date that the indebtedness of the IRS arises "easier" is debatable, since it is not difficult to determine when the IRS authorizes a refund; nor do we believe that ease of computation is a sufficient reason for the result. We therefore conclude that we must resort to § 6407 to determine when the debt of the IRS for a tax refund accrues to a taxpayer. A plain reading of § 6407 yields the conclusion that a refund does not arise until the IRS has authorized an overassessment. Taxpayers frequently make errors in submission to the IRS, and therefore it is not until the IRS authorizes the refund that it should be considered to be, in any sense, "due." The statute provides that the date that the IRS authorizes the refund is the date of the allowance of the refund. It seems logical to equate the allowing of a refund under § 6407 to the arising of a debt under § 553(b). For this reason, we conclude that the relevant date to determine when the IRS's debt arose is the date that the refund was authorized by the IRS. Using the date that the refund was authorized as the crucial date in Pettis's fact

situation leads to the conclusion that the difference between the "beginning insufficiency" and the "setoff insufficiency" is $646.76, and that amount is therefore properly recoverable from the DOE. Of course, the result would be the same if we used the date of the filing of her return as the crucial date.

The application of § 553(b) to Hankerson's fact situation is even easier. Her bankruptcy petition was filed April 25, 1991. Hankerson filed a federal tax return on March 11, 1991, for the tax year ending December 31, 1990, claiming a refund of $1,892.00. This refund return included a request for an earned income credit.

The amount owed to the DOE by Hankerson, as of January 25, 1991, which is 90 days prior to the bankruptcy filing, was $3,362.44. At an indeterminate date between March 11, 1991, and April 25, 1991, the IRS set off Hankerson's tax refund of $1,892.00 against the $3,362.44 owed by Hankerson to the DOE. In this situation, as in that of Pettis, if the debt of the IRS to Hankerson arose on either the date of the filing of the tax return *or* on the date when the IRS authorized the refund, then the setoff is within the scope of § 553(b) and is recoverable by Hankerson.

The establishment of the end of the ensuing tax year as the date that debt of the IRS arises to the Debtors is particularly inappropriate in the Hankerson factual situation, because Hankerson filed for a tax benefit, *i.e.*, an earned-income credit. It is very difficult to see how much a benefit, which could not have arisen until a return was filed, could be held to have arisen at the end of the previous tax year.

We hence conclude that, 90 days prior to the bankruptcy filing, there was no debt owed from the IRS to Hankerson. The "beginning insufficiency" is therefore $3,362.44. On the date of setoff, the insufficiency amount was $1,470.44 ($3,362.44 − $1,892.00). The "beginning insufficiency" exceeds the "setoff insufficiency" by $1,892.00 and that amount is therefore recoverable under § 553(b). Only if the date the debt of the IRS to Hankerson for her

tax refund is held to have arisen on the last date of the taxable year would the IRS's setoff be allowable in light of § 553(b). However, for the reasons discussed at pages 716–717 *supra* in relation to Pettis, the date that the return is authorized by the IRS is determined by us to be the appropriate date to determine when the IRS's debt to Hankerson arose. Therefore, the setoff in issue is recoverable, as it improved the IRS's position within the intended meaning of § 553(b).

Thus we find that, in the case of both of the Debtors, their respective refunds arose within the 90–day pre-petition period, and after a "beginning insufficiency" was established. Hence, the setoffs effected by the IRS in both instances work to reduce the "insufficiencies" and are recoverable.

The Defendants acknowledge the presence and force of § 553(b). However, they argue that certain pronouncements in *Lee, supra,* support the inapplicability of § 553(b) to the cases at bar. In particular, *Lee* speaks of the Congressional concern that certain creditors, "primarily banks, ... would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the 'insufficiency,' ..." 739 F.2d at 877. However, *Lee* refuses to apply § 553(b) to the facts before it only because it holds that the governmental indebtednesses to the debtor for Social Security benefits arose before 90 days pre-petition, rather than, as the debtor argued, on each month that the debtor survived and received benefits post-petition. *Id.*

In the instant factual settings, as we have demonstrated, the IRS's respective obligations to the Debtors arose post-petition, when the IRS authorized the Debtors' refunds. Therefore, the exception to the applicability of § 553(b) recognized in *Lee* is not present. We do not agree with the Defendants' contention that *Lee* suggested that § 553(b) could or should be reached

more narrowly than its language provides. *Compare United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (the plain meaning of language of the Bankruptcy Code is conclusive). It is clear, for example, that, while § 553(b) may have been drafted with bank setoffs in mind, it is not limited to setoffs by banks on its face. It has, moreover, been applied in numerous factual situations which did not involve banks. *See, e.g., Dillard Ford, supra; In re Rooster, Inc.,* 127 B.R. 560, 571–72 (Bankr.E.D.Pa.1991); *In re Aquasport, Inc.,* 115 B.R. 720, 722 (Bankr. S.D.Fla.1990); and *Balducci Oil, supra.*

Despite dicta to the contrary in *Cresta v. United States,* 58 B.R. 588, 589–90 (E.D.Pa.1986), *Lee* did *not* suggest that § 553(b) applied in only certain circumstances, notably only when the creditor intended its setoff to effect a better position for itself. The creditor's motive is not recited in the statute as a basis for application of § 553(b).[4]

The Defendants' strongest authorities in support of their contention that § 553(b) does not command a result in favor of the Debtors are *Stall, supra,* 125 B.R. at 758–59; and *Moses, supra,* 91 B.R. at 997–98. However, the analyses in both of these cases are marred by the arguments of the debtors in those cases, at least as recited by the respective courts, which suggest the simplistic and erroneous reading of § 553(b) discussed at pages 714–715 *supra.* The debtors reportedly argued that the setoffs improved the DOE's position only because the DOE received more than it would have received in a Chapter 7 case, *Stall, supra,* 125 B.R. at 759; or in a Chapter 13 plan, *Moses, supra,* 91 B.R. at 997, on account of the offsets.

*Moses* ultimately appears to conclude that the application of § 553(b) is confined to commercial settings in which the offsetting creditor intentionally tried to improve

---

**4.** The bankruptcy court deciding *Cresta,* per Judge Goldhaber, held, in legitimate harmony with *Lee,* that § 553(b) was not applicable because the debtor had not proven that the debt payable by the Veterans Administration in issue had arisen in the "vulnerability period," *i.e.,* the 90–day pre-petition period. *See In re Cresta,* 51 B.R. 127, 129–30 (Bankr.E.D.Pa.1985), *aff'd,* 58 B.R. 588 (E.D.Pa.1986).

its position. *Id.* at 998. We cannot agree that § 553(b) is so limited.

In *Stall,* the court completes its analysis with the unexplained finding that the IRS took no action to increase the tax refund during the crucial 90–day period. 125 B.R. at 759. It is difficult to determine whether this statement is correct in light of our analysis at pages 716–717 *supra,* because the *Stall* court does not recite the operative dates, *i.e.,* when the debtor filed her tax return and when her tax refund was authorized by the IRS. *Id.* at 756. The court only cites the date of the refund, which of course was in the 90–day period. *Id.* However, that date is not necessarily the date that the refund was authorized, because the IRS could delay between authorizing the refund and effecting the setoff. To the extent that the *Stall* court implicitly rejects our reasoning by considering the date of authorization of the refund insufficiently material to recite, we must respectfully also disagree with that court's analysis.

■ Although we believe that the issue of susceptibility of the setoffs in issue to § 553(b) follows directly from a careful reading of the Code, we would also debate any contention of the Defendants that a decision in their favor is supported by policy considerations. Allowing any creditor to exercise setoff rights with impunity allows that creditor, "simply because the debtor also fortuitously happens to have a claim against the creditor," to receive "favored treatment." *Lessig Construction, supra,* 67 B.R. at 441. Thus, bankruptcy courts have a mandate to control creditors' exercise of setoff rights, *see In re TM Carlton House Partners Ltd.,* 93 B.R. 859, 870 (Bankr.E.D.Pa.1988), and to not allow such rights to be exercised by creditors in a manner which will frustrate a debtor's reorganization efforts, even when such rights might otherwise be allowable under § 553. *See In re New York City Shoes, Inc.,* 78 B.R. 426, 431 (Bankr.E.D.Pa.1987).

We do not decide this case on equitable grounds; while the recovery of the funds in issue will certainly be welcomed by the Debtors, we do not deem their recovery as essential to the Debtors' "reorganizations" (as neither contemplates a reorganization) or their respective "fresh starts." However, we wish to make it clear that we believe that at least certain equities favor the result which we reach. There is no logical reason why PHEAA, the DOE, and the IRS, by a clever process of assignment and reassignment of dated indebtednesses among themselves, should be able to manipulate their processes to obtain preferences unavailable to other creditors. We reject the Defendants' suggestion that our result would allow debtors to improperly manipulate the filing of their refund requests and the filing of their bankruptcies. A debtor wishing to minimize setoffs would simply file before any setoffs are effected and thereby implicate the automatic stay. *See* 11 U.S.C. § 362(a)(7).

■ One other issue deserves treatment. In response to Pettis's arguments based upon § 547(b), the Defendants argue that the rights accorded to the DOE under § 553(b) constitute the enforcement of a statutory lien, and that the Debtors can recover their offset refunds only upon providing adequate protection to the DOE. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 211–12, 103 S.Ct. 2309, 2316–17, 76 L.Ed.2d 515 (1983); and *United States v. Norton,* 717 F.2d 767, 770 (3d Cir.1983). The Defendants also point out that a statutory lien is not avoidable under § 547. 11 U.S.C. § 547(c)(6). They might have further added that, if they were secured creditors, they would for that reason be able to defend against the Debtors' claims on the ground that the Debtors would be unable to meet the requirement of 11 U.S.C. § 547(b)(5). *See In re Rimmer Corp.,* 80 B.R. 337, 339 (Bankr.E.D.Pa. 1987).

Hankerson argues that any secured status of the Defendants, since it arises solely because of the setoff, is subject to avoidance under § 553(b). *Lee, supra,* 739 F.2d at 875 n. 7, holds that § 553(b) eliminates any "statutory right of setoff" claimed by a governmental creditor. However, it is not clear that this passage in *Lee* means, as Hankerson apparently reads it, that a stat-

utory lien, as opposed to the lien created solely by the right to a setoff, can be avoided by § 553(b).

Nevertheless, we do not think that the DOE obtained a statutory lien in the offset funds. The IRC, at § 6402(d), gives a federal agency the right to give notice to the IRS to effect a setoff. However, nothing in that statute suggests that the right of the federal agency to recovery automatically ripens into a statutory *lien.*

In support of its argument that its rights do constitute a statutory lien, the Defendants cite to *In re Conley,* 54 B.R. 363, 366 (Bankr.S.D.Ohio 1985); and *In re Biddle,* 31 B.R. 449, 455–56 (Bankr.N.D.Iowa 1983). These cases hold that, since a charge of the IRS against a taxpayer in favor of a state automatically arises from a statute, the state's rights under the operative statute rise to the level of a statutory lien. *Biddle* and *Conley* construe 26 U.S.C. § 6402(c), a provision comparable to § 6402(d), which allows the IRS to intercept tax refunds on behalf of the states to collect delinquent child support payments. The *Biddle* court appears to reason that § 6402(c) gives the state a lien against the tax overpayments simply because it gives the state a "charge" against the overpayments. 31 B.R. at 455–56. Thus, it argues that these statutory rights create a lien *per se.* The *Conley* court merely states that it is "persuaded" by *Biddle*'s reasoning without reiterating it. 54 B.R. at 365–66.

It is true that, *if* the DOE's rights manifested a lien, the lien would be a "statutory lien," as opposed to a "consensual lien" or a "judicial lien." *See In re Aikens,* 87 B.R. 350, 353 (Bankr.E.D.Pa.1988). However, the mere fact that the DOE may have certain rights against a taxpayer because of § 6402(d) does not automatically cause those rights to be liened. The law of this Circuit is, contrary to the crucial premises in *Biddle,* that a governmental body's exercise of statutory rights does *not per se* create a statutory lien in favor of that body. *See Gardner v. Commonwealth of PA, Dep't of Public Welfare,* 685 F.2d 106, 108–09 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *In re Griggs,* 12 B.R. 443, 445–48 (Bankr.

E.D.Pa.1981); and *In re Waite,* 11 B.R. 608, 609–10 (Bankr.M.D.Pa.1981) (even though the Commonwealth obtained a lien against a welfare recipient's property pursuant to a state statute, the lien was a "judicial lien" subject to 11 U.S.C. § 522(f)(1), rather than a "statutory lien").

There is no indication that the IRS took any steps to enter or enforce a tax lien against either of the Debtors, pursuant to 26 U.S.C. § 6323. There is, therefore, no basis on which the Defendants could argue that the IRS has or ever had a federal tax lien against the Debtors, and we do not understand them to so argue.

Although we disagree with their analyses of § 553(b), we note that the courts in *Stall* and *Moses* indicate that neither were impressed with the DOE's apparently-identical argument in those cases that its rights against the respective debtors under § 6402(d) constituted a statutory lien. In *Moses,* the court concludes simply that "[t]here is no showing of any statutory lien in issue." 91 B.R. at 996. In *Stall,* the court expressly declines to analyze this issue. 125 B.R. at 759.

For all of these reasons, we conclude that the DOE's assertion that it has a statutory lien by reason of its exercise of setoffs pursuant to 26 U.S.C. § 6402(d) is incorrect and/or irrelevant. This argument is therefore ineffectual to alter our decision that the Debtors may avoid the tax-refund setoffs in issue.

3. *As the federal Defendants are not immune from suit, judgment may and will be entered against the DOE.*

In brief passages in its submission in the Hankerson case, the Defendants argue that, since they did not (understandably) file proofs of claim in these no-asset Chapter 7 cases, they are immune from a suit for recovery of even any sums for which they might otherwise be liable as the result of "fallout" from the Supreme Court's decision in *Hoffman, supra.* Hankerson counters by arguing that 11 U.S.C. § 106(c), which provides as follows, represents a Congressional waiver of federal sovereign immunity:

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "credit", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

In *Hoffman*, a four-justice plurality of the Court expressly overruled the previously-controlling local Court of Appeals decision in *Vazquez, supra,* and held that § 106(c) did not include the requisite "unmistakably clear" language necessary to abrogate the rights of the states, under the Eleventh Amendment, to be immune from suit in federal court. 492 U.S. at 101–04, 109 S.Ct. at 2822–24.

One of the arguments addressed by the plurality was that its result would render § 106(c) irrelevant. The plurality rejected this argument by stating as follows, *id.* at 103, 109 S.Ct. at 2823:

The section [§ 106(c)] applies to the Federal Government as well, see 11 U.S.C. § 102(26) (defining "governmental unit" as including the "United States"), and the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts.

It is difficult for us to imagine a clearer declaration by the plurality of their conclusion that, even if § 106(c) did not provide a waiver of the *states'* rights under the Eleventh Amendment, it certainly *did* constitute a Congressional waiver of the federal government's *own* rights to immunity from suit under the Bankruptcy Code.

Four *Hoffman* dissenters would have concluded that § 106(c) *was* unmistakably clear in waiving even the states' Eleventh Amendment rights. *Id.* at 106–11, 109 S.Ct. at 2825–27. The deciding vote, cast by Justice Scalia, was based upon his belief that Congress was without power to abrogate the states' Eleventh Amendment rights. *Id.* at 105, 109 S.Ct. at 2824. It seems clear that the four dissenters, which include two present members of the Court, would have joined the plurality in holding that § 106(c) does constitute a waiver of sovereign immunity as to federal entities. There is no reason to assume that Justice Scalia would have held differently. Therefore, no member of the Court has indicated an intention not to apply § 106(c) as a waiver of sovereign immunity as to federal governmental entities.

Nevertheless, this court is aware that two Courts of Appeals have ruled, at least in certain circumstances, that the three *Hoffman* opinions, taken together, portrayed an intention of the Court to extend immunity to federal governmental entities, despite the presence of § 106(c). In *Rinehart, supra,* 887 F.2d at 170, the Eighth Circuit Court of Appeals holds that, since "the Court's opinion refers to the federal government as well," its analysis that § 106(c) does not waive sovereign immunity as to the states "is equally applicable to a waiver of sovereign immunity by the federal government." In *In re Pearson,* 917 F.2d 1215, 1216 (1990), the Ninth Circuit Court of Appeals, "reading the tea leaves" which it finds are residue of *Hoffman,* holds that the federal government is immune from damage awards under 11 U.S.C. § 362(h).

The analysis of *Pearson* is confined to § 362(h), which is not in issue here. The *Pearson* court points to the fact that even the dissenters in *Hoffman* appeared to conclude that § 362(h) did not include the "trigger words" contained in § 106(c)(1) which are necessary to effect a waiver of sovereign immunity. 492 U.S. at 109 n. 4, 109 S.Ct. at 2826 n. 4. However, § 553(b), like § 547(b), does include the "trigger word" "creditor," and § 550(a)(1) includes the "trigger word" "entity." There is little that we can say about the reasoning of the *Rinehart* court except to indicate that we believe that it totally misreads the references to the application of § 106(c) to the federal government which are contained in the plurality opinion.

█ The vast majority of post-*Hoffman* decisions have declined invitations to hold

that *Hoffman* portended the extension of sovereign immunity to the federal government. The most notable is the decision of the Sixth Circuit Court of Appeals in *In re Nordic Village, Inc.*, 915 F.2d 1049, 1051–55 (1990), *cert. granted sub nom. United States v. Nordic Village, Inc.*, —— U.S. ——, 111 S.Ct. 2823, 115 L.Ed.2d 994 (1991). Decisions of lower courts in Circuits other than the Eighth have consistently held to the same effect. *See, e.g., In re Husher*, 22 B.C.D. 108, 109–10, 131 B.R. 550 (E.D.N.Y.1991); *In re Ballard*, 131 B.R. 97, 99–101 (Bankr.W.D.Wis.1991); and *In re Davis*, 131 B.R. 50 (Bankr.E.D.Va. 1991). Several cases have also disagreed with even the less-sweeping conclusion in *Pearson* that federal agencies are immune from liability under § 362(h). *See In re Price*, 130 B.R. 259, 262–68 (N.D.Ill.1991); *In re Everett*, 127 B.R. 781 (Bankr. E.D.N.C.1991); and *In re Fernandez*, 125 B.R. 317, 319–21 (Bankr.M.D.Fla.1991).

In addition to believing that the foregoing courts' reasoning that § 106(c) does waive immunity of the federal government is correct, we also note that we continue to be bound by the decision of the Supreme Court in *Whiting Pools, supra*, 462 U.S. at 209, 211, 103 S.Ct. at 2316–17, holding that the IRS was obliged to turn over the fruits of a federal tax levy to the debtor upon the debtor's production of adequate protection of the IRS's interests. It appears to us that a conclusion that the federal government is immune from suit would have been inconsistent with the result in *Whiting Pools. See also Lee, supra*, 739 F.2d at 873–76, 878 (the court ordered the Social Security Administration to turn over the post-petition benefits which it had recouped from the debtor); *Norton, supra*, 717 F.2d at 774–75 (the court required the IRS to turn over the refunds which it improperly retained from the debtors' post-petition tax refunds, although it reversed an award of additional damages against the IRS for contempt of court); and *University Medical Center v. Sullivan*, 122 B.R. 919, 930–33 (E.D.Pa.1990), *reconsideration denied*, 125 B.R. 121, 124–28 (E.D.Pa.1991) (federal agency required to return funds improperly set off; damages under § 362(h) not

awarded solely because the court found the federal agency's actions were not "willful," and not because of immunity).

The Debtors are seeking recovery of only their improperly-withheld refunds. They are therefore seeking only such relief as the plaintiffs were awarded in *Whiting Pools, Lee, Norton*, and *University Medical Center*. Controlling caselaw thus appears to direct the conclusion that federal agencies are not immunized from such relief.

Finally, in its submissions in the Hankerson case, the IRS argues that 26 U.S.C. § 6402(e) specifically provides that any action to recover a refund under 26 U.S.C. § 6402(d) should be brought against the federal agency on whose behalf the reduction was made, not against the IRS. Hankerson offered no rejoinder to this argument. Since the DOE is liable to the Debtors under § 550(a)(1) irrespective of the liability of the IRS, we suspect that the fact that only the DOE will be rendered liable to the Debtors is deemed not troublesome by them.

### E. CONCLUSION

An Order granting relief to the Debtors against the DOE only will therefore be entered.